UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 16-CR-60239-BLOOM

UNITED STATES OF AMERICA

vs.

BRITISH ALEXANDER MITCHELL, a/k/a "Brisco,"

       Defendant.
_____/

## FACTUAL PROFFER

The United States of America and BRITISH ALEXANDER MITCHELL, a/k/a "Brisco," hereby agree that, had this case proceeded to trial, the United States would have proven beyond a reasonable doubt the following facts, which occurred in Broward County, in the Southern District of Florida, and elsewhere:

A source of information told agents that MITCHELL was interested in purchasing "Big Head 5's," which are genuine 1996 series $5 notes. MITCHELL offered to pay double the value in genuine notes in return. The source of information assumed it was for the purpose of using the "Big Head 5's" as the paper to make counterfeit currency.

As a result, contact was made between MITCHELL and an undercover officer (UC). The UC was introduced to MITCHELL as someone who could provide the "Big Head 5's" that MITCHELL was interested in. MITCHELL then began to sell what he knew was counterfeit currency to the UC. The UC paid for the counterfeit currency with genuine currency and MITCHELL believed that the UC intended to pass the counterfeit currency as genuine. On September 16, 2015, MITCHELL sold the UC five, counterfeit $100 bills. On December 9, 2016, Mitchell sold the UC $3,000 in counterfeit. On December 10, 2015, MITCHELL sold the UC $1,200 in counterfeit. On December 17, 2015, MITCHELL sent the UC a text stating, "if you wanna buy more I can give you a crazy deal on it." On December 17, 2015, MITCHELL sold the UC $2,700 in counterfeit. On January 14, 2016, MITCHELL sold the UC seven, counterfeit $100 bills. The following day, the UC sent a text message to MITCHELL indicating that the quality of the counterfeit bills he purchased on January 14, 2016 was not good.

A review of the serial numbers provided to the UC by MITCHELL shows that they have a circulation amount of approximately $157,300 (excluding the amount that the UC purchased from MITCHELL). Prior to the UC's interaction with MITCHELL, on April 19, 2015, a BSO Deputy stopped co-defendant Isaacs for a traffic infraction and located seven, counterfeit $100 notes in co-defendant Isaacs' possession. The serial number of at least one of those notes in co-defendant Isaacs' possession matched the serial number of notes later sold by MITCHELL to the UC.

On April 6, 2016, agents followed Co-Conspirators David Christopher Isaacs and Tekle Mason to a Home Depot in Hialeah. Agents went inside and made contact with the manager and they watched Mason's activities on surveillance video.

Agents saw Co-Conspirator Mason do a telephone payment transaction for the purchase of items totaling $1,318.24. Home Depot allows customers inside the store to do over the phone payment transactions. With this payment method, the customer inside the store provides the cashier with the telephone number of a third person who will provide payment information. The cashier calls the third person and the third person provides the cashier with the credit card number to be used as payment. The cashier will then input that credit card number to complete the sale.

For this April 6, 2016 telephone payment transaction witnessed by agents, Co-Conspirator Mason provided the cashier with the telephone number for a third person. Simultaneous with providing the cashier with the telephone number for the third person, Co-Conspirator Mason sent a text message to Co-Conspirator Isaacs stating "look out for the call." The third person on the telephone provided the cashier with a Capital One Visa credit card issued to "R.M.," ending in 5878. The card was successfully charged for Co-Conspirator Mason's items, totaling $1,318.24. Co-Conspirator Mason then met back up with Co-Conspirator Isaacs outside the Home Depot.

After leaving the Home Depot, Co-Conspirator Mason drove Co-Conspirator Isaacs' to a nearby Wells Fargo parking lot. There, Co-Conspirators Isaacs and Mason provided the items from Home Depot to another individual. Co-Conspirator Mason often sold items purchased from Home Depot to contractors at a discount. For example: on April 28, 2016, Co-Conspirator Mason sent a text message to a person labeled in his phone as "Carlos Electrician Shif Blood," stating "how is things? U need sumpn?? *We got Fridges n Stoves*!!!;" and on March 12, 2016, Co-Conspirator Mason sent a text message stating "me deh ya wid [Co-Conspirator Sohnchez Grant] a organize Wag wan wid Home Depot" and "Just made a Depot run *No orders?*"

Later on April 6, 2016, agents followed Co-Conspirators Isaacs and Mason to another Home Depot, located in West Dade. There, Co-Conspirator Mason entered, picked up a few items and tried to purchase them with a card, but the cashier refused to do the transaction because he could not produce appropriate identification. Co-Conspirator Mason then returned to Co-Conspirator Isaacs outside. Co-Conspirator Isaacs then entered the Home Depot, went to the same cashier where Co-Conspirator Mason had been, but per the cashier, he also could not produce appropriate identification and so no transaction occurred.

Capital One provided recordings of several phone calls made by Co-Conspirators Isaac and MITCHELL in which they called Capital One to: (1) complain when a Home Depot transaction on a victim credit card was not working; or (2) check the balance on a victim credit card. Capital One also provided its fraud loss related to this conspiracy, which is in excess of $200,000. Home Depot, Lowes and other retail locations in which Capital One cards were used fraudulently also provided additional video surveillance of the conspirators engaged in the same fraudulent conduct witnessed by agents on April 6, 2016.

Surveillance video from a Lowes in Pembroke Pines on March 9, 2016 shows Co-Conspirator Grant purchasing items totaling $970.96. To make the purchase, Co-Conspirator Grant had the cashier input the credit card number onto the payment keypad. He used a Capital One credit card

ending in 3847. On March 20, 2016, MITCHELL went back to Lowes and returned the items Co-Conspirator Grant purchased on March 9, 2016. After returning the items, MITCHELL then used a victim Capital One credit card ending in 9949 to make an additional purchase.

On March 25, 2016, at approximately 8:30 p.m., Co-Conspirator Isaacs called Capital One about a credit card ending in 7891. Co-Conspirator Isaacs identified himself as the cardholder, "T.P." and gave the cardholder's correct date of birth. Co-Conspirator Isaacs stated that he was at Home Depot attempting to use his Capital One credit card to make a purchase for $1,814.30 and it was not going through. As a result of the call, Capital One approved the charge.

Surveillance video from a Home Depot in Hialeah shows that on March 25, 2016 at a time close to 8:30 p.m., MITCHELL completed a telephone payment transaction for items totaling $1,814.30, and they were paid for with a victim Capital One credit card ending in 7891.

On March 19, 2016 MITCHELL called Capital One twice regarding a credit card ending in 1619. MITCHELL called Capital One from the same telephone number that he used to communicate with the UC. During the calls, MITCHELL identified himself as the cardholder, "M.A." March 22, 2016 surveillance video from a Home Depot in Hialeah shows MITCHELL completing a telephone payment transaction for items totaling $853.80, which were paid for with a Capital One credit card ending in 1619.

The credit card numbers identified above were issued to real people and MITCHELL did not have authorization to use them. The individuals identified above by initials are real people. Neither MITCHELL nor his co-coconspirators had authorization to use the victim's information. Credit card numbers are a means of identification. MITCHELL knew that his and his co-conspirators purchases would be made with fraudulently obtained account numbers and MITCHELL willfully joined in the plan. MITCHELL knew that his purchases would be paid for with the account number of a real person. All of MITCHELL's actions, as described above, were done knowingly and willfully. The issuers of the victim account numbers, Home Depot and Lowes do business interstate.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 2/24/17     By: _____
                      KAREN O. STEWART
                      ASSISTANT UNITED STATES ATTORNEY

Date: 2/18/17     By: _____
                      SCOTT DAVID RUBINCHIK    0088544
                      ATTORNEY FOR DEFENDANT

Date: 2/18/2017   By: _____
                      BRITISH ALEXANDER MITCHELL, a/k/a "Brisco,"
                      DEFENDANT

3